UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM VALERIO,

                         Petitioner,                    **REPORT AND RECOMMENDATION**
                                                        **No. 02-CV-903(RJA)(VEB)**

        -vs-

WILLIAM PHILLIPS, Superintendent of
Green Haven Correctional Facility,

                         Respondent.
_____

**I.       Introduction**

        William Valerio ("Valerio" or "petitioner"), proceeding *pro se*, seeks a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 on the basis that he is being held in state custody in

violation of his federal constitutional rights.

        This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for the

issuance of a report and recommendation regarding the disposition of Valerio's petition. For the

reasons that follow, I recommend that a writ of habeas corpus be denied and that the petition be

dismissed.

**II.      Factual Background and Procedural History**

        **A.      Pre-Trial Proceedings**

        Valerio's custody arises from a judgment of conviction entered on October 10, 1997, on

charges of first degree criminal possession of a controlled substance (N.Y. Penal Law §

220.21(1))[1] following a jury trial in New York County Court (Seneca County). Valerio, along with his acquaintance Maurice Cox ("Cox"), were arrested on November 1, 1996, after New York State Troopers found eight kilograms of cocaine secreted in the Chevy Lumina sedan in which the two men were driving.

During the presentation of evidence to the grand jury, Cox waived immunity and testified for the prosecution. According to Cox, he had approached Valerio, whom he knew to be a drug dealer, several weeks before the arrest and asked him for help in procuring some marijuana to sell for profit. About two days before the arrest, Valerio and Cox had driven down to New York City. Valerio had told him that he was not going to pick up drugs but was instead going to visit some family members, pick up some clothing on lay-away, and pay some money to someone. On the way back from New York City, the men stopped at a rest area where their car drew the attention of some New York State Troopers because it was parked illegally in a "bus only" space. Cox and Valerio gave conflicting answers about their travels and could not provide information about the car's ownership and registration, raising the troopers' suspicions. Because the car's registration had expired, the troopers impounded it. At the police barracks, Valerio gave his written consent to search the car. With the assistance of a canine unit, the troopers discovered eight kilograms of cocaine in a hidden compartment behind the rear seat of the Chevy Lumina.

Cox denied knowing anything about the cocaine being transported in the car. Cox eventually pled guilty to misdemeanor charges of criminal possession of a controlled substance and conspiracy; he was sentenced, prior to Valerio's trial, to a determinate one-year term of

---

[1]      A defendant is guilty of first degree criminal possession of a controlled substance if he "knowingly and unlawfully possess[ed] . . . one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances [were] of an aggregate weight of four ounces or more." N.Y. Penal Law § 220.21(1) .

incarceration on each conviction. Cox testified for the prosecution at Valerio's trial.

Valerio's motion to suppress the seized drugs and the statements he had made to the state troopers was unsuccessful. Valerio proceeded to trial on August 18, 1997.

### B.      The Trial

Cox testified for the prosecution that he had met Valerio when they were about twelve years-old but that they had lost touch when Cox moved to another town about two years later. T.514-17. In mid-October of 1996, Cox ran into Valerio on the street in the City of Niagara Falls. Cox testified that he needed money so he asked Valerio to supply him with some marijuana to sell for profit. T.521-23.  Valerio gave Cox his phone number and said to call him. T.522, 524.

Cox called him the next day; Valerio said that he "hadn't heard anything and [to] give him some time to work on something." T.525. Cox called Valerio several times over the next few weeks to see when they were going to leave for New York City but Valerio kept postponing the trip. At about 1:00 a.m. on a Tuesday night/Wednesday morning in last week of October, Cox went to the Buffalo bus station where Valerio picked him up in a gray Chevy Lumina. T.529-31. Cox testified that as they were leaving, Valerio stated that he wanted to go to New York City to see his family and do some shopping and because he had to pay someone $6,000. T.533-34.

Cox asked Valerio if they were going to get drugs; Valerio said no, explaining to Cox that he did not want to put "his family through that or himself through that," and that he had been "jammed up" before when someone put drugs in his car. T.535. According to Cox, Valerio said that he had asked Cox to accompany him to see whether he could trust Cox. T.537. Valerio did not elaborate

on what he meant. T.537.

At about 8:00 a.m. that morning, the two men arrived in New York City, and Valerio drove to a delicatessen in the Bronx where they met a man whom Valerio said was his cousin. T.540-41. Cox testified that he spent most of the day at the deli, but that Valerio left by himself on a couple of occasions. Cox related that he, Valerio, and the cousin went to an automobile salvage yard and went clothes shopping; Valerio purchased boots, jeans, jackets, shirts, and underwear, all of which were paid for in cash. T.544. At about 10:30 p.m., the three men left the deli in the cousin's car. Cox testified that he fell asleep for a while; when he woke up, they had returned to where the Chevy Lumina was parked. T.551-52. They then went to the apartment of a woman whose name Cox did not know where there were several other people drinking, dancing and listening to music. Cox and Valerio spent the night there. T.553-56. The next day, Valerio and his cousin left Cox at the apartment, where he spent the day.  Valerio's cousin came to pick him up at about 5 p.m. and brought him to another apartment. Valerio showed up there about half an hour later and asked Cox if he was ready to leave. T.556-59.

Valerio asked Cox to drive the Chevy Lumina back to Albany because he (Valerio) had to drive with his wife to Albany. The two cars left New York City at about 6:30 p.m. on Thursday night. In Albany, Valerio joined Cox in the Chevy Lumina. T.561. With Cox driving, the two men continued towards Buffalo, eventually stopping about 100 miles from Buffalo at the Junius Ponds Rest Area to get gas. T.566. Cox related that he pulled into a "no parking" zone near the bathrooms because he had to use the restroom "really bad" and that he and Valerio went into the rest area together. T.567-68. About five minutes later, Cox testified, Valerio told him to go move the Chevy because "the cops were at the car." T.568.

-4-

Juts after midnight, New York State Troopers Timothy Jackson ("Jackson"), Gary Hand ("Hand"), and Kenneth Watson ("Watson") observed the Chevy parked in a bus-only, no-stopping area of the parking lot. No one was inside the car, and the hazard lights were flashing.T.327-29, 350-51, 384-85. Jackson testified that he had just called in the license plate number to check the car's registration when Cox and Valerio came running towards the car. T.329-30. Jackson rolled down his window and twice called out to Cox, asking if that was his car. T.330. Jackson testified that both men ignored him and continued to run toward the car. T.331, 352, 568-69. Watson testified that when he called out and asked Valerio whether he owned the car, Watson observed the two men exchange looks of "bewilderment." T.386-87.

Jackson then approached Cox, who was on the driver's side of the car. T.331. At Jackson's request, Cox produced his license, but he did not have the car's registration and stated that he did not know to whom the car belonged. T.331-32, 570-72. When asked where he was coming from and where he was going, Cox responded that he had been in New York City for three days and that he did not have any clothing aside from what he was wearing. T.333-34.

Watson approached Valerio, who was on the passenger's side.  After being asked a second time, Valerio responded that he had borrowed the car from his employer, Lemuel Jones ("Jones"). T.387-88. (Watson, by happenstance, was acquainted with Jones from his neighborhood growing up in Buffalo, and knew that Jones worked at Jones' father's auto repair shop in the Buffalo area. T.388, 434-35.) Valerio, who had told Watson that his name was "Bill," indicated that the registration was in the car. T.387-89. With Valerio's consent, Watson visually checked the car and saw two cell phones and several articles of gold jewelry, one of which was a bracelet with the name "Ramon" on it. T.390. Watson testified that he also noticed a strong smell

of cologne inside the car. T.390-91.

Valerio explained to Watson that he had been in New York City shopping for clothes, which he said were in the trunk of the car. T.393-95. Watson asked if he could see the clothes, and Valerio had Cox open the trunk. T.394, 573. With Valerio's consent, Watson looked inside the shopping bags, which contained two leather jackets (one with a $399-price tag), two leather shirts, several pairs of jeans, and a pair of hiking boots (with a $90-price tag). Neither Valerio nor Cox could not produce any receipts for the items of clothing. T.335, 356-57, 395.[2]

Troopers Jackson and Watson then returned to their patrol car, and Hand advised them that the Chevy Lumina's registration had expired two or three days earlier, and that neither Cox nor Valerio owned the car. T.353. The registered owner of the vehicle was Lemuel Jones. T.353-54, *see also* T.392. At that point, the troopers decided to impound the car because the New York State Thruway regulations provide that an unregistered car cannot be driven on that highway. T.334, 353-54, 398. Watson testified that he explained to Valerio and Cox that the car was going to be impounded and an inventory search conducted. Watson said that they could either arrange to have someone pick them up at the rest area or they could get a ride from the officers to the trooper station and use the telephone there. T.337, 398. Hand indicated that Valerio "appeared to be very nervous" upon hearing about the impoundment, and "was shaking his knee up and down and fidgeting with his fingers." T. 375d.

During the inventory search of the car, T.359, 401, Watson noticed a strong aroma of perfume and discovered a scent-infused blotter sheet in a plastic bag under the passenger's seat. T.408. Watson also observed that the front panel of the fuse box in the glove compartment was

---

[2]     Valerio said that some of the clothing belonged to him and some to Cox; Cox told the troopers that none of the clothing was his. T.394-95.

missing, and that several fuses had been removed. T.408. Another scent-infused blotter sheet was found in the trunk. T.416-17. He then requested that Valerio consent to a more thorough search of the Chevy Lumina, and Valerio agreed to sign a voluntary consent form. T.419.

At Watson's request, Seneca County Deputy Sheriff Christopher Constable ("Constable") brought his drug-sniffing dog to the trooper station to assist with the search. T.359, 505-06. After the dog alerted them to an area located between the trunk and the back seat of the vehicle, T.359, Constable and Hand removed the back seat. T.508. Behind the back-rest portion was a purple and teal-colored duffel bag which felt to Hand as though it contained brick-shaped objects. T.360, 511. Inside the bag were eight bricks of a white substance wrapped in clear plastic and silver-colored duct tape. T.360-61, 511.[3] The bricks, which in total weighed about eight kilograms, tested positive for cocaine.

Upon hearing that the troopers had discovered cocaine in the Lumina, Cox testified at trial that he told Jackson that he had just been a passenger on a trip with Valerio and that he had no idea what was going on. T.347, 575. When Cox asked Valerio what was going on in the presence of the officers, Valerio responded that "there was something in the car." T.576. Cox testified that at that point, he "assumed what was in the car." T.576.

Cox testified that the day following the encounter at the rest area, Valerio reassured him

---

[3]     Narcotics Unit Investigator Ken Giovanni ("Giovanni") testified that the plastic-wrapped bricks tested positive for the presence of cocaine and had a street value of between one-half and three-quarters of a million dollars. T.259-60, 280. The parties stipulated that further testing confirmed that the bricks were cocaine and, in total, weighed eight kilograms. T.513. Giovanni also testified that, based on his expertise in narcotics transportation and sale, the perfume-infused blotter paper was utilized to mask the smell of the drugs. T.274-75. According to Giovanni, the Chevy Lumina was modified to be used to transport illegal drugs. T.275. One of the cell phones in the car was a "clone phone", which are commonly used by people used as "mules" in the narcotics trade. T.253.

that he (Valerio) would tell the police that Cox "had nothing to do with this and that he [Cox] drove him [Valerio] down there." T.578. Cox testified that over the following weeks, Valerio kept promising that he was going to help Cox and get him out of trouble. T.579-80. In late November, they had one of their last conversations at the county jail where they were incarcerated. Cox testified that he asked Valerio what was going on, and Valerio said that he "ha[d] to look out for himself first and that's how the game goes." T.580.

The defense theory was that it was Cox who was knowingly transporting cocaine in the Chevy Lumina to Buffalo. In support, the defense presented Victor Burgos ("Burgos"), Valerio's cousin, who testified that he worked for a taxi company in the Bronx. T.664. Around Halloween-time in 1996, Valerio telephoned him and said that he was coming to visit; it was a Wednesday morning. T.666. Valerio told Burgos that he was coming to pick up some clothing. Valerio arrived at 10:30 a.m. and was dropped off at Burgos' house by a friend, whose name Valerio did not mention. T.667. Later that afternoon, a horn beeped outside; it was the friend returning to pick up Valerio. T.668. Burgos went downstairs with him; the friend was introduced as "Mody" (Cox's nickname). T.669. They all talked for about twenty minutes and then went to a clothing store to pick up some garments that Valerio had put on lay-away. T.670. Burgos identified the grey Chevy Lumina as the car Cox was driving. T.669. At the clothing store, Burgos testified, Cox gave the clerk money for Valerio's clothing on lay-away. T.671. After doing more shopping, Cox dropped Burgos and Valerio off at Burgos' house at about 5:30 p.m. Later, Cox picked them up and they went to visit a woman named Jackie, a friend of Valerio's and Burgos' from childhood. T.675. According to Burgos, Cox left the party with a girl early. T.676. Valerio and Burgos had to call a taxi to take them home.

-8-

The next day, Cox returned to Burgos' house at about 5 p.m. and beeped the horn. Burgos went downstairs and Cox asked him where Valerio was. Burgos replied that he was visiting his (Valerio's) mother and sister. T.677-78. Burgos telephoned Valerio at his relatives' house and Valerio came back to Burgos' house and left with Cox. T.679.

Larricus Crittenden ("Crittenden") testified for the defense that he had been friends with Valerio for the past nine or ten years. T.694. Crittenden played in a basketball league in Niagara Falls and occasionally bumped into Cox, a locally well-known high school basketball player, at games. T.696-97. During October of that year, Crittenden recalled, he used to see Cox driving a gray Chevy Lumina. T.697-98.

The defense's next witness was Lemuel Jones, who testified that he ran an auto repair shop in Buffalo. T.708-09. Jones stated that Valerio had worked for him last year for about three months washing cars, detailing, and running errands. T.710. Jones testified that he owned the Chevy Lumina. At the time Valerio was arrested, Jones had already sold it to a man named Victor Ruiz for $5,000. T.711. Jones produced a receipt dated September 3, 1996, indicating that he had received $2,500 and would release the lien once the full price was paid. T.713, 716-17. However, Jones testified, he did not satisfy the lien when he received the remaining $2,500; instead, he used it to pay for some costs associated with expanding his business. T.717. According to Jones, Ruiz, the buyer, was not pressing him for the paperwork since the car was insured and registered. T.717. Jones testified that the second time Ruiz brought the Lumina back to the shop for repairs, a "tall, dark-skinned, low-haircut guy got out of the Lumina and parked it [sic] and gave the keys to [Ruiz]." T.720. Jones identified that person as Cox from a photograph but indicated that he did not know his name. T.721. Jones testified that he saw Cox accompany

Ruiz in the Lumina on two occasions. T.721.

 Valerio testified in his own behalf that he was twenty-three years-old and had met Cox about nine years ago when they played basketball together at the Niagara Falls Boys' Club. T.751. They lost touch in 1991 and ran into each other again in mid-October 1996 on the street in Niagara Falls. Valerio told Cox that he was going down to New York City, where he was from originally, to visit his family. T.753.  Cox told Valerio that he used to go down there frequently for basketball tournaments and offered to give Valerio a ride. T.753. Valerio testified that Cox picked him up in his car (the gray Chevy Lumina). Valerio related that Cox was going to New York City "meet a few friends, play some basketball, stuff like that." T.756. Valerio's description of the trip was essentially consistent with his cousin's (Burgos') testimony. Valerio testified that Cox, "out of the kindness of his heart," gave him about $170 in cash to retrieve some clothes he had placed on lay-away. T.787. When they stopped at the rest area in Junius Ponds and were questioned by the troopers, Cox was asked to produce the registration and insurance out of the glove compartment. T.766. Valerio testified that Cox told the troopers that someone named "Victor" owned the car. T.767. Valerio related that when he was told about the cocaine being found, he did not indicate that the cocaine belonged to him, to Cox, or to anyone else. T.771. When he saw Cox at the jail and asked what had happened, Cox told him he "didn't know." T.771.

 In rebuttal, to discredit Jones' credibility, the prosecution called Detective John Ferby ("Ferby") of the Buffalo Police Department's Drug Enforcement Administrative Task Force who testified about his interview of Jones at his business, Car Corner. T.810. Ferby asked Jones whether he knew that a car registered in his name had been used to transport eight kilos of

cocaine. T.811. Jones replied affirmatively and told Ferby that he had sold the Chevy Lumina to

Valerio. T.811. Jones told Ferby that he had kept the car registered in his name because Valerio

had not finished paying him for it. T.812. When Ferby asked to see the paperwork regarding the

sale, Jones indicated that he had given it to his attorney. T.812.

The jury returned a verdict convicting Valerio as charged in the indictment. He was

sentenced to an indeterminate term of imprisonment of twenty-five years to life and is currently

serving his sentence.

### B.    Post-Conviction Proceedings

On March 1, 1999, prior to his direct appeal being perfected, Valerio filed a *pro se*

motion to vacate the conviction pursuant to New York Criminal Procedure Law ("C.P.L.") §

440.10, arguing, *inter alia*, that trial counsel had provided ineffective assistance. *See*

Respondent's Exhibit ("Resp't Ex.") A, attached to Respondent's Answer ("Resp't Ans.")

(Docket No. 15). The prosecution did not file papers in opposition. On April 1, 1999, the trial

court denied the application in its entirety, holding that petitioner's claims were "issues which

could be raised upon appeal, and relate to matters which were addressed on the record."[4] *See*

Resp't Ex. B. On April 12, 1999, Valerio filed a Notice of Motion for Permission to Appeal

Pursuant to C.P.L. Secs. 450.15(1)(2) and 460.15(1). *See* Resp't Ex. C.

On January 18, 2000, Valerio's appellate counsel appealed the judgment of conviction to

the Appellate Division, Fourth Department, of New York State Supreme Court. *See* Resp't Ex.

D. Appellate counsel asserted three claims, all of which related to the pre-trial suppression

---

[4]        Section 440.10(2) provides that a court "must deny a motion to vacate a judgment when: . . . (b)
[t]he judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the
record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an
appeal . . . ." N.Y. Crim. Proc. Law § 440.10(2)(b).

hearing. On July 7, 2000, a divided panel of the Appellate Division affirmed Valerio's conviction. *People v. Valerio*, 274 A.D.2d 950 (App. Div. 4th Dept. 2000). The dissenting justice, finding that Valerio's consent to the inventory search had been the product of improper police inquiry, voted to grant the motion to suppress the seized cocaine. This justice granted Valerio leave to appeal to the New York Court of Appeals, *see* Resp't Ex. H, which held that the determinations by the Appellate Division regarding the search and seizure involved mixed questions of law and fact supported by evidence in the record, thereby placing the issues beyond its powers of appellate review. *People v. Valerio*, 95 N.Y.2d 924 (N.Y. 2000); Resp't Ex. I. Leave to appeal accordingly was denied. *Id.*

Valerio then filed an application for a writ of error *coram nobis* in the Appellate Division, Fourth Department, on August 23, 2001. *See* Resp't Ex. J. Petitioner contended that his appellate counsel had provided deficient representation on appeal by failing to raise four meritorious issues relating to trial counsel's ineffectiveness–specifically, that trial counsel erroneously had (1) failed to request a jury instruction that Cox was an accomplice and that his testimony needed to be corroborated, (2) failed to request that the "court admonish the jury not to draw any inference of petitioner's guilt from Cox's plea", (3) failed to "object to the admission into evidence drugs that may have been tampered with and where a chain of custody was never established", and (4) failed to "object to the prosecution's suppression of *Rosario* material [*i.e.*, Cox's sentencing minutes]". *See* Resp't Ex. J. The prosecution opposed the application. *See* Resp't Ex. K. The Appellate Division summarily denied the motion on December 21, 2001. *People v. Valerio*, 289 A.D.2d 1101 (App. Div. 4th Dept. 2001). The New York Court of Appeals denied leave to appeal on February 21, 2003.  *See* Resp't Ex. M.

Valerio filed a second *coram nobis* application on April 1, 2003, arguing that appellate counsel had been ineffective in failing to argue that the prosecutor had knowingly presented perjured testimony from Cox during trial. *See* Resp't Ex. N. Valerio contended that the prosecutor had allowed "her key witness, Cox, to lie and mislead the jury as to his actual knowledge of the drugs being concealed in the vehicle he was riding in." Resp't Ex. N at 13; *see also* Resp't Ex. P. Valerio premised this claim on the fact that Cox had pled guilty to criminal possession of a controlled substance but subsequently testified at Valerio's trial that he did not have any knowledge of the drugs concealed in the car. The prosecution opposed the motion, arguing that Valerio had failed to present any evidence that Cox actually had perjured himself. *See* Resp't Ex. O; *see also* Resp't Ex. Q. The Appellate Division denied the application, and the New York Court of Appeals denied leave to appeal.

### C.    The Federal Habeas Proceeding

On December 9, 2002, Valerio filed his original habeas corpus petition in this Court, raising two claims for relief. Ground 1 alleged that appellate counsel was ineffective in failing to argue that trial counsel had been ineffective on four bases, which he then described in detail in Ground 2. The alleged omissions by trial counsel were the same as those asserted in support of Valerio's first *coram nobis* application. *See* Docket No. 1; *see also* Resp't Ex. J.  On May 1, 2003, before respondent had answered the petition, Valerio filed an Amended Petition (Docket No. 9), re-asserting Grounds 1 and 2 and adding a Ground 3–that the prosecutor had knowingly suborned perjury by Cox at trial.

Valerio was granted permission to file the Amended Petition (Docket No. 9) by the Court (Foschio, M.J.). *See* Docket No. 13.  Respondent answered the Amended Petition on August 11,

2003. *See* Docket Nos. 15, 16. Valerio filed a motion to amend his first Amended Petition on

October 22, 2003 (Docket Nos. 20, 21). On January 30, 2004, the Court (Foschio, M.J.) granted

the motion, as respondent did not oppose the application.  *See* Docket No. 25. Valerio filed his

Second Amended Petition (Docket No. 26) on February 24, 2004. The Second Amended Petition

(Docket No. 26) asserts the same claims as the Amended Petition (Docket No. 9).

 Valerio filed a third motion to amend, *see* Docket Nos. 36, 37, 38 & 41, seeking to add

two additional claims of ineffective assistance of trial counsel. Respondent opposed this

application. *See* Docket Nos. 39, 40. On November 21, 2007, this Court denied Valerio's motion

to file a third amended petition, finding that the proposed new claims were time-barred under 28

U.S.C. § 2244(d)(1)'s statute of limitations and did not "relate back" to the Second Amended

Petition under Rule 15(c) of the Federal Rules of Civil Procedure. *See* Docket No. 46.

 In its Answer to the Amended Petition/Second Amended Petition, respondent concedes

that all of the issues raised in support of Ground 1 (ineffective assistance of appellate counsel)

are fully exhausted because Valerio fairly presented them to the state courts in his first *coram

nobis* application. Respondent contends, however, that Valerio's claims of ineffective assistance

of trial counsel (Ground 2) and subornation of perjury by the prosecutor (Ground 3) have not

been properly exhausted and are barred from habeas review due to an unexcused procedural

default. In any event, respondent argues, all of Valerio's claims are without merit.

 For the reasons that follow, I recommend that the petition be dismissed.

## III. Standard of Review

 Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal

court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on

the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

## IV.    Exhaustion and Procedural Default

### A.    General Principles

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also* 28 U.S.C. § 2254(b)(1).[5] In order to fulfill the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," *id.* at 844, which includes filing a petition for discretionary review with the State's highest court if that right is available by statute, *id.* at 845; accord *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir.2000); *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005). The federal court must assess whether the petitioner  has "properly exhausted" his state remedies by "fairly present[ing]," *O'Sullivan*, 526 U.S. at 848, to the state court "both

---

[5]        "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
        (A) the applicant has exhausted the remedies available in the courts of the State; or
        (B) (i) there is an absence of available State corrective process; or (ii) circumstances exist that
        render such process ineffective to protect the rights of the applicant."

28 U.S.C. § 2254(b)(1)(A), (B).

the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*); *accord Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir.1997); *Galdamez*, 394 F.3d at 74.

"For exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" *Grey v. Hoke*, 933 F.2d 117,120 (2d Cir. 1991) (quoting *Harris v. Reed*, 489 U.S. 255, 263 n. 9 (1989); other citations omitted)). In such a case, the petition cannot be said to have "remedies available in the courts of the State" within the meaning of 28 U.S.C. § 2254(b). *Id.* at 120-21; *see also* 28 U.S.C. § 2254(c). However, "[a] petitioner may not evade exhaustion's strictures by defaulting his or her federal claims in state court." *Galdamez*, 394 F.3d at 73-74 (citing *Coleman v. Thompson*, 501 U.S. 722, 732 (19910). In other words, a petitioner may not claim that he has fulfilled the exhaustion requirement by virtue of the fact that no longer has "the right under the law of the State to raise, by any available procedure, the question presented," 28 U.S.C. § 2254(c), if, at some point in time, the petitioner had the right to raise the claim but failed to do so. *Id.* at 74 (citing *O'Sullivan*, 526 U.S. at 848 (noting that a petitioner who let the limitations period for filing direct appeals lapse, thereby rendering state remedies unavailable, would have failed to "fairly present" his or her federal claims to the state courts, thereby procedurally defaulting the federal habeas petition).

Where a petitioner has, in this way, procedurally forfeited his right to raise his unexhausted claims in state court, he is "bar[red] . . . from litigating the merits of those claims in federal habeas proceedings, absent a showing of cause for the procedural default *and* prejudice resulting therefrom." *Grey*, 933 F.2d at 121 (citing *Murray v. Carrier*, 477 U.S. 478, 492 (1986);

*Wainwright v. Sykes*, 433 U.S. 72, 87-91 (1977) (emphasis supplied). "Cause" requires a demonstration that "some objective factor external to the defense impeded counsel's efforts to raise the claim in state court." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (citing *Murray v. Carrier*, 477 U.S. at 488). A petitioner satisfies the "prejudice" requirement by showing that "actual prejudice result[ed] from the errors of which [petitioner] complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). Failing the "cause and prejudice" test, a petitioner's other means of overcoming a procedural default is to attempt to fulfill the demanding "miscarriage of justice" exception, which requires supplementation of petitioner's claim of a constitutional violation with a "colorable showing of factual innocence" in the form of newly adduced evidence. *See McCleskey*, 499 U.S. at 495.

> **B.     Petitioner failed to properly exhaust his perjury claim (Ground 3) which should be "deemed exhausted" but found to be barred from habeas review due to a procedural default.**

Respondent asserts that Valerio has completely failed to exhaust Ground 3–that prosecution witness Cox committed perjury–because he never presented this claim in any of his post-conviction applications for relief in state court. *See* Respondent's Memorandum of Law ("Resp't Mem.") at 34-35 (Docket No. 16). As respondent notes, Valerio did not raise this claim on direct appeal or in his *pro se* motion to vacate the judgment pursuant to C.P.L. § 440.10. *See id.* (citing Resp't Exs. A, D, & F). He did, however, raise it indirectly when he argued in his second motion for a writ of error *coram nobis* that appellate counsel provided ineffective assistance because he failed to raise the perjury issue on appeal.

Respondent argues that while that motion may have been sufficient to exhaust the claim of ineffective assistance of appellate counsel, it was insufficient to exhaust Valerio's due process

-17-

claim stemming from the alleged perjury by prosecution witness Cox. Courts in this Circuit are in agreement with respondent's argument that a writ of error *coram nobis* is not the appropriate procedural vehicle for exhausting any claims other than claims of ineffective assistance of appellate counsel. *See*, *e.g.*, *Ehinger v. Miller*, 928 F. Supp. 291, 294 (S.D.N.Y. 1996); *Johnson v. Walker*, 74 F. Supp.2d 287, 300 (W.D.N.Y. 1999) (Foschio, M.J.) ("However, the trial error on which Petitioner's ineffective assistance of appellate counsel claim was predicated, *i.e.*, the denial of effective assistance of trial counsel during a critical stage of the criminal proceeding, was not raised on direct appeal. Moreover, as review of the denial of effective assistance of trial counsel claim is statutorily provided for under New York Criminal Procedure Law § 470.15(1), a writ of error *coram nobis* is not the appropriate remedy for that claim. Accordingly, Petitioner's claim that he was denied effective assistance of trial counsel is not exhausted.") (citing *Garcia v. Keane*, 973 F. Supp. 364, 369 (S.D.N.Y.1997); *People v. Vincent*, 50 N.Y.2d 901 (N.Y. 1980)).

As respondent notes, a *coram nobis* motion to the Appellate Division addresses errors at the appellate level . . . not trial errors." *Ehinger v. Miller*, 928 F. Supp. at 294 (citing *Mathis v. Hood*, 851 F.2d 612, 615 (2d Cir. 1988) (noting that the New York Court of Appeals has "found that the proper vehicle for bringing a claim of ineffectiveness of appellate counsel [i]s a writ of error *coram nobis* addressed to the appellate division which affirmed the original conviction") (citing *People v. Bachert*, 69 N.Y.2d 593, 596, 599 (N.Y. 1987)); *see also People v. Gordon*, 183 A.D.2d 915, 584 N.Y.S.2d 318, 318 (App. Div. 2d Dept. 1992) ("In a criminal action, the writ of error *coram nobis* lies in [the state appellate court] *only* to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel.") (citing *People v. Bachert*, 69 N.Y.2d 593) (emphasis supplied)). Claims asserting trial errors, on

the other hand, ordinarily are raised on direct appeal or via a C.P.L. § 440.10 motion before the trial court where the issues are based on matters *dehors* the record. *Ehinger*, 928 F. Supp. at 294 (citing *Walker v. Dalsheim*, 669 F. Supp. 68, 70, 71-72 (S.D.N.Y. 1987); *Camarano v. Irvin*, 902 F. Supp. 358, 365 (S.D.N.Y. 1994) ("Under New York law 'an application for a writ of error *coram nobis* is not an appropriate vehicle' for claims that would properly be addressed to the trial court in a [C.P.L.] § 440.10 motion, including a claim of ineffective assistance of trial counsel like petitioner's here.") (quoting *Cortez v. Scully*, 717 F. Supp. 224, 226 (S.D.N.Y. 1989)), *aff'd mem.*, 122 F.3d 1055 (2d Cir. 1995)).

Although Valerio could file another motion to vacate the judgment under C.P.L. § 440.10, alleging Cox committed perjury, I agree with respondent that this would be futile and the perjury claim should be "deemed exhausted" because that claim is now procedurally barred from presentation to the highest court in New York from which review can be obtained. First, pursuant to New York Court Rules § 500.10(a), a defendant is entitled to only one request for leave to appeal in the Court of Appeals, which Valerio already has used in connection with the direct appeal of his conviction. *Grey*, 933 F.2d at 120 (citing N.Y. Ct. Rules § 500.10(a)). Although Valerio could file another C.P.L. § 440.10 motion to vacate the judgment, the state court would be compelled to deny the motion because the perjury claim is premised entirely on the trial record. *See* N.Y. Crim. Proc. Law § 440.10(2)(c). Thus, as respondent points out, Valerio does not have the option of exhausting the perjury claim by means of a collateral attack. *See Grey*, 933 F.2d at 120.  Because Valerio failed to raise his claim in state court by means of the appropriate procedural vehicle and no longer may do so, his claim is procedurally defaulted. *See id.*; *Washington v. James*,  996 F.2d 1442, 1447 (2d. Cir.1993), *cert. denied*, 510 U.S. 1078

(1994). Unless Valerio can demonstrate cause for, and prejudice resulting from, the procedural default, or establishes that dismissal of the claim would result in a "fundamental miscarriage of justice," habeas review is unavailable. *Grey v. Hoke*, 933 F.2d at 121.

Valerio has not attempted to fulfill the cause-and-prejudice test. *See Coleman*, 501 U.S. at 750. Indeed, prejudice is singularly lacking here, where Valerio has failed to establish a crucial element of the procedurally defaulted claim–namely, that Cox committed perjury. *See Perkins v. LeFevre*, 691 F.2d 616, 619 (2d Cir. 1982) (to prevail on a claim alleging witness perjury, petitioner must demonstrate that perjury actually occurred, that the prosecution knew or should have known about the perjury and failed to correct it at trial, and that the perjury was material to the guilty verdict); *United States v. Zichettello*, 208 F.3d 72, 102 (2d Cir. 2000) (reversal based on use of perjured testimony "not justified unless the appellant establishes . . . (i) the witness actually committed perjury . . .; (ii) the alleged perjury was material . . .; (iii) the government knew or should have known of the alleged perjury at the time of trial . . .; and (iv) the 'perjured testimony remained undisclosed during trial . . .'") (quoting *United States v. Blair*, 958 F.2d 26, 29 (2d Cir. 1992)). The basis of Valerio's perjury claim is the seeming discrepancy between Cox's admission that he pled guilty to the reduced charge of seventh degree criminal possession of a controlled substance and his testimony denying any knowledge about the presence of the cocaine in the car. At trial, defense counsel extensively cross-examined Cox on this issue, asking Cox how it could be true both that he "pled to knowingly possessing a controlled substance" but stated that he did not know the drugs were in the car. *E.g.*, T.588-89; *see generally* T.581-94.  Cox maintained that although he did not know that the cocaine was in the car, he decided to plead guilty and cooperate with the prosecution because "when [they] got

-20-

arrested the stuff [*i.e.*, the cocaine] was in the car" and "[he] was in the car." T.589.

When a defendant is accused of criminally possessing a controlled substance, the "possession" may be actual or constructive, *see People v. Sierra*, 45 N.Y.2d 56, 59-60 (N.Y. 1978). New York also has a statutory presumption applicable to automobiles, Penal Law § 220.25(1), which recognizes the "likelihood that all persons inside automobile carrying quantities of drugs know about drugs and are involved in their transport" and accordingly creates a rebuttable presumption of knowing possession[6] of the drugs by every person in the automobile at the time the drugs are found. *People v. Leyva*, 38 N.Y.2d 160, 166 (N.Y. 1975).  Furthermore, because Cox pled guilty to a lesser included offense of the charges in the indictment, no factual colloquy was even required under New York state law so it was not necessary for him to affirmatively state that he knew that the cocaine was in the car. *E.g.*, *People v. Williams*, 35 A.D.3d 1198, 1199, 825 N.Y.S.2d 885, 886 (App. Div. 4th Dept. 2006) (citations omitted).

Thus, the apparent inconsistency in Cox's testimony does not mean that Cox testified falsely, let alone that the assistant district attorney knowingly elicited perjured testimony from Cox. Since the perjury claim is clearly lacking merit, Valerio cannot demonstrate prejudice as a result of the procedural default. *See Cappiello v. Hoke*, 698 F. Supp. 1042, 1052 (E.D.N.Y.) ("Naturally, petitioner's procedural default of his claim of ineffective trial counsel is prejudicial only if such claim is meritorious. For the reasons stated below, the court finds such claim to be

---

[6]       The presumption of knowing possession is permissive in nature, permitting, but not requiring, the jury to find the defendant guilty. *People v. Leyva*, 38 N.Y.2d at 168 & n. 3; *accord  People v. Lemmons*, 40 N.Y.2d 505, 510 (N.Y. 1976); *see also Gray v. Babbie*, No. 94 CV 5123(NG), 1998 WL 178824, at *4 (E.D.N.Y. Feb. 12, 1998). The presumption  operates as an instruction to the jury that it may infer knowing possession based on the unexplained presence of illegal drugs in an automobile. *See id.* Any evidence in the case, including the inherent or developed incredibility of the prosecution's witnesses, as well as the defendant's own testimony, may be used to rebut the presumption. *Id.* at 167.

without merit, and therefore no prejudice to exist."), *aff'd*, 852 F.2d 59 (2d Cir. 1988). There

consequently is no need for the Court to consider whether cause to excuse the procedural default

exists, since both criteria must be fulfilled. *See Francis v. Henderson*, 425 U.S. 536 (1976)

(stating that both cause and prejudice must be demonstrated). Furthermore, Valerio has not come

forward with new evidence of his actual innocence so as to demonstrate that a fundamental

miscarriage of justice will occur should the Court decline to hear the defaulted claim. *See*

*Bousley v. United States*, 523 U.S. 614, 623 (1998) (citing *Carrier*, 477 U.S. at 496); *Smith v.*

*Murray*, 477 U.S. 527, 537 (1986)).

     I recommend that Valerio's perjury claim (Ground 3) be found to be procedurally

defaulted. Because Valerio has failed to satisfy the prerequisites for overcoming the procedural

default, I further recommend that the claim be dismissed.

     **C.**    **Petitioner's ineffective assistance of trial counsel claims (Grounds 2(a) - (d))**
              **have not been exhausted but must be "deemed exhausted" and procedurally**
              **barred from habeas review.**

     Respondent asserts that Valerio's first three claims of ineffective assistance of trial

counsel (Grounds 2(a)-(c)) are unexhausted because, although Valerio raised them in his C.P.L.

§ 440.10 motion before the trial court, he did not then appeal the denial of that motion to the

Appellate Division. I agree that because he never has sought leave to appeal the denial of that

motion to the Appellate Division, as permitted by C.P.L. § 460.10(4)(a), Valerio has not

presented these claims to each level of the state court system as required by 28 U.S.C. §

2254(b)(1)(A). *See, e.g.*, *O'Sullivan*, 526 U.S. at 845; *Daye*, 696 F.2d at 191. Therefore, the first

three claims of ineffective assistance of trial counsel have not been exhausted. *Accord, e.g.*,

*Priester v. Senkowski*, No. 01CIV.3441(LMM)(GWG), 2002 WL 1448303, at *6 (S.D.N.Y. July

-22-

3, 2002).

Respondent also argues that Valerio has failed to properly exhaust the fourth claim of ineffective assistance of trial counsel (Ground 2(d)) based on the failure to object to the admission of the drugs on chain-of-custody grounds because Valerio only raised this claim in his application for a writ of error *coram nobis*. Although Valerio's "state *coram nobis* brief made reference to trial counsel's ineffectiveness in arguing that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness, that did not directly raise the trial counsel ineffectiveness issue." *Ehinger v. Miller*, 928 F. Supp. at 294.  I agree with respondent that Valerio did not fairly present his fourth claim that trial counsel was ineffective in failing to object at trial to the introduction into evidence of the seized drugs; Valerio's allegation in his August 2001 *coram nobis* application that his *appellate counsel* was ineffective for failing to argue that trial counsel was ineffective was not sufficient for this purpose. *See*, *e.g.*, *Parron v. Quick*, 869 F.2d 87, 88-89 (2d Cir.1989) (ineffective assistance of counsel claim that was presented to the state court "only by implication" as part of a speedy trial claim had not been properly exhausted).

However, all four of Valerio's ineffective assistance of trial counsel claims must be "deemed exhausted" because Valerio faces an absence of corrective process were he to return to state court and attempt to raise them in another C.P.L. § 440.10 motion. *See Grey v. Hoke*, 933 F.2d at 120-21. Valerio's grounds for alleging ineffective assistance of counsel are readily apparent on the record; indeed, the only evidence that petitioner relies upon in support of his claims is the trial transcript. Because the four unexhausted ineffective assistance of counsel claims are clearly demonstrable without resort to matters outside the record, the state court

would deny a second motion to vacate based upon the mandatory dismissal provision in C.P.L. §
440.10(2)(c).[7] Valerio's claims alleging that trial counsel provided ineffective assistance should
be deemed exhausted, because those claims are now procedurally barred from presentation to
New York's courts.  *See Grey v. Hoke*, 933 F.2d at 120 ("For exhaustion purposes, 'a federal
habeas court need not require that a federal claim be presented to a state court if it is clear that
the state court would hold the claim procedurally barred.' . . . In such a case, a petitioner no
longer has 'remedies available in the courts of the State" within the meaning of 28 U.S.C. §
2254(b).") (quoting *Harris v. Reed*, 489 U.S. at 263 n. 9; other citations omitted). However, this
procedural state-court forfeiture bars Valerio from litigating the merits of those claims here,
absent a showing of cause for the procedural default and prejudice resulting therefrom. *See id.*
(citing *Murray v. Carrier*, 477 U.S. at 492; *Wainwright v. Sykes*, 433 U.S. at 87-91).

Valerio has neither shown cause nor prejudice for the default, nor has he come forward
with new evidence of his actual innocence so as to satisfy the fundamental miscarriage of justice
exception. Because he cannot overcome the procedural bar, I recommend dismissing all four of
Valerio's claims of ineffective assistance of trial counsel (Ground 2).

## V.   Merits of Petitioner's Exhausted Claim of Ineffective Assistance of Appellate Counsel (Ground 1)

### A.   General Legal Principles

---

[7]    The Second Circuit has observed that "[m]otions to vacate judgment, which permit 'evidentiary exploration' of matters both on and off the record, are the preferred avenue for inadequate representation claims in New York." *Cabalero v. Keane*, 42 F.3d 738, 740 (2d Cir. 1994) (quoting *People v. Brown*, 45 N.Y.2d 852, 854 (N.Y. 1978)) *see also Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003) (citing *People v. Harris*, 109 A.D.2d 351 (N.Y. App. Div. 2d Dept. 1985)). However, the Second Circuit has recognized that C.P.L. § 440.10(2)(c)'s procedural bar remains applicable to ineffective assistance of counsel claims that are clearly demonstrable without resort to matters outside the record. *See, e.g., Sweet*, 353 F.3d at 140 (failure to object to jury charge); *Aparicio v. Artuz*, 269 F .3d 78 (2d Cir. 2001) (same); *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (failure to object on double jeopardy grounds).

The Sixth Amendment affords criminal defendants the right to the effective assistance of counsel on any appeal granted him as a matter of right. *See Douglas v. California*, 372 U.S. 353, 357-58 (1963). The two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)[8] for evaluating trial counsel's effectiveness also is used to evaluate a claim of ineffective assistance of appellate counsel. *Mayo v. Henderson*, 533 F.3d 528, 533 (2d Cir. 1994) (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992), *cert. denied*, 508 U.S. 912 (1993); *Abdurrahman v. Henderson*, 897 F.2d 71, 74 (2d Cir.1990)). "In attempting to demonstrate that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Mayo*, 13 F.3d at 533 (citing *Jones v. Barnes*, 463 U.S. 745, 754 (1983)). In order to establish that he was prejudiced as a result of appellate counsel's omission of a claim, a petitioner must demonstrate that "'there was a "reasonable probability" that [his] claim would have been successful before the [state's highest court].'" *Id.* (quoting *Claudio*, 982 F.2d at 803 (footnote omitted in original; alteration in original)).

### B.   Analysis of the Omitted Claims of Ineffective Assistance of Trial Counsel

#### 1.   Failure to request a jury charge regarding the corroboration of accomplice testimony.

Valerio contends that trial counsel erred in failing to request a jury instruction regarding New York state's requirement that accomplice testimony be corroborated. C.P.L. § 60.22(1)

---

[8]        To prevail on a claim of ineffective assistance of trial counsel under the *Strickland* standard, a habeas petitioner first must show that his attorney's performance "fell below an objective standard of reasonableness," 466 U.S. at 688. Second, he must show prejudice as a result of counsel's deficient performance–that there is a "reasonable probability" that but for counsel's error, the outcome would have been different, *id.* at 694.

provides that a "defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." N.Y. Crim. Proc. Law § 60.22(1).[9] An accomplice is defined as "a witness in a criminal action who, according to evidence adduced in such action, may reasonably be considered to have participated in . . . [t]he offense charged . . . or . . . [a]n offense based upon the same or some of the same facts or conduct which constitute the offense charged." N.Y. Crim. Proc. Law § 60.22(2) (quoted in *People v. Caban*, 5 N.Y.3d 143, 152 (N.Y. 2005)). "Where the undisputed evidence establishes that a witness is an accomplice, the jury must be so instructed but, if different inferences may reasonably be drawn from the proof regarding complicity . . . the question should be left to the jury for its determination[.]" *People v. Caban*, 5 N.Y.3d at 152 (quotation omitted). The corroboration requirements of C.P.L. § 60.22 have been described by the New York Court of Appeals as "minimal," *id.* at 155, necessitating "only enough nonaccomplice evidence to assure that the accomplices have offered credible probative evidence" that connects "the accomplice evidence to the defendant," *id.* (quotation omitted).

Assuming for the sake of argument that Cox was an accomplice and a jury charge would have been warranted, Valerio has not shown that he was prejudiced by trial counsel's failure to request the charge because the prosecution's other evidence compellingly established his guilt of criminally possessing the cocaine. *See People v. Winbush*, 206 A.D.2d 556, 556, 615 N.Y.S.2d 60, 61 (App. Div. 2d Dept. 1994) (rejecting claim that trial court erred in failing to give

---

[9]      The federal constitution does not prohibit the conviction of a defendant based on the uncorroborated testimony of an accomplice. *Young v. McGinnis*, 411 F. Supp.2d 278, 299 (E.D.N.Y. 2006) (citing *Caminetti v. United States*, 242 U.S. 470, 495 (1917); *Martinez v. Walker*, 380 F. Supp.2d 179, 183 (W.D.N.Y. 2005); *Gaiter v. Lord*, 917 F. Supp. 145, 150 (E.D.N.Y. 1996)). "A conviction may be sustained on the basis of the testimony of a single accomplice, so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." *United States v. Gordon*, 987 F.2d 902, 906 (2d Cir. 1993) (citations omitted).

corroboration charge where "there was evidence which was independent of the alleged accomplice's testimony, and the evidence as a whole establishing the defendant's guilt was overwhelming"). As noted elsewhere in this Report and Recommendation, New York has what is known as the "automobile presumption," *see* Penal Law § 220.25(1),[10] which permits the factfinder to presume knowing possession of a controlled substance on the part of all the occupants of an automobile in which that controlled substance is found. Through the testimony of witnesses other than Cox, the prosecutor established that petitioner's boss, Lemuel Jones, was the registered owner of the Chevy Lumina with the hidden compartment in which the state troopers found the drugs. Valerio had worked for Jones at his automobile repair shop, which performed body work and rebuilt cars. Jones testified that before he allegedly sold the Lumina to Victor Ruiz, he had rebuilt the car from a "total loss." Investigator Giovanni testified as a narcotics expert that the Lumina had been altered by Jones for the purpose of transporting drugs. There was evidence that petitioner had borrowed the vehicle from his boss, who continued to pay insurance and registration on the car despite having sold it. *See* T.387-88, 419. The troopers testified that Valerio provided evasive and inconsistent answers when questioned about his travels to New York City and his clothing purchases, and had reacted nervously when informed by the state troopers that they were going to impound the car and conduct an inventory search of it. T.375. *See United States v. Schlesinger*, 372 F. Supp.2d 711, 724 (E.D.N.Y. 2005)

---

[10]       "The presence of a controlled substance in an automobile, . . . , is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such controlled substance was found; except that such presumption does not apply (a) to a duly licensed operator of an automobile who is at the time operating it for hire in the lawful and proper pursuit of his trade, or (b) to any person in the automobile if one of them, having obtained the controlled substance and not being under duress, is authorized to possess it and such controlled substance is in the same container as when he received possession thereof, or (c) when the controlled substance is concealed upon the person of one of the occupants." N.Y. Penal Law § 220.25(1).

("[N]ervous or evasive behavior is also relevant suspicious conduct from which a juror could draw a reasonable inference of consciousness of guilt.") (citing *Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000) (discussing flight in the context of reasonable suspicion); *Pinkney v. Keane*, 737 F. Supp. 187, 197-98 (E.D.N.Y. 1990) (finding that evasive responses to police questions after the crime demonstrated consciousness of guilt)). In addition, there was testimony that Valerio ultimately admitted ownership of all of the other items seized during the search, including the bags of clothing, the gold jewelry, and the cell phones. T.393-96. Giving deference to "the jury's choice of the competing inferences that can be drawn from the evidence," *United States v. Morrison*, 153 F.3d 34, 49 (2d Cir.1998), there was sufficient independent evidence of Valerio's guilt to satisfy the constitutional standard.  *See United States v. Morales*, 577 F.2d 769, 775 n.5 (2d Cir. 1978) ("[I]n this case, there was evidence from which a jury could have inferred that the defendant knew that he was transporting drugs, including strong evidence of consciousness of guilt. Government agents testified that the passenger compartment in the defendant's car was permeated with the smell of marijuana; that the car was hard to drive because of the weight of the contraband in the trunk; and that the defendant became 'noticeably nervous' when the officer asked him to open the trunk."). In light of the statutory presumption of possession coupled with the substantial evidence of Valerio's guilt apart from Cox's testimony, there was no "reasonable probability" that the verdict would have been favorable had the jury been instructed on New York's accomplice corroboration requirement. For that reason, Valerio was not prejudiced by trial counsel's failure to request such a charge.

Moreover, Valerio has failed to show that trial counsel's decision to forego a request for an accomplice charge lacked a reasonable strategic basis. As respondent points out, trial

counsel's aim from the outset was to distance his client from Cox. Requesting that the trial court instruct the jury that petitioner and Cox were accomplices would have had the opposite effect and thus were counter to the defense strategy. The fact that trial counsel's chosen strategy was ultimately unsuccessful does not render his performance objectively unreasonable. *See Ramos v. Artuz*, 40 F. Supp.2d 206, 208 (S.D.N.Y. 1999) ("[Petitioner] quarrels with his counsel's decisions not to, for example, request an accomplice corroboration instruction, request a circumstantial evidence charge and or to call various witnesses. While different strategic decisions could have been made, the ones that were made fell within the range of constitutional effectiveness. Even though counsel's strategy was ultimately unsuccessful, that fact does not render his assistance constitutionally ineffective.") (citing *United States v. DiTommaso*, 817 F.2d 201, 215 (2d Cir. 1987) ("We will not second-guess trial counsel's defense strategy simply because the chosen strategy has failed.") (citations omitted)).

> **2.      Failure to request a jury instruction that no adverse inference regarding petitioner's guilt be drawn from the co-defendant's guilty plea**

Valerio contends that it was "*per se* ineffectiveness" for trial counsel not to "request that the court admonish the jury be instructed not to draw any adverse inference of petitioner's guilt from Cox's guilty plea." Resp't Ex. J at 22. However, the record supports respondent's argument that this was a reasonable strategic decision by trial counsel. During his summation, defense counsel focused on Cox's guilty plea, urging the jury to conclude that the fact that Cox had pled guilty supported petitioner's claim of innocence. Defense counsel argued that based on the evidence it made more sense to find that Cox–not Valerio–actually was criminally liable. Counsel reminded the jury that Cox had already pled guilty to possession of the same cocaine

with which Valerio was charged with possessing. This argument, and the decision not to request the jury charge at issue, were in furtherance of defense counsel's legitimate, albeit unsuccessful, strategy to encourage the jury to view Valerio and Cox as two independent actors, with Cox being the person who knowingly was transporting the drugs in the car. Even though they may prove unsuccessful, "[a]ctions or omissions by counsel that '" might be considered sound trial strategy"'do not constitute ineffective assistance." *United States v. Best,* 219 F.3d 192, 201 (2d Cir. 2000) (quoting *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Furthermore, Valerio has not explained, and I cannot discern from the present record, how the result of the trial would have been different had defense counsel requested that the jury be instructed that they should not draw any adverse inference regarding Valerio's guilt based on Cox's guilty plea. Therefore, Valerio is unable to establish that he was prejudiced by trial counsel's failure to request a jury charge regarding Cox's guilty plea.

### 3.    Failure to object to the prosecution's failure to disclose "*Rosario*" material

According to Valerio, trial counsel was deficient in failing to object to the prosecution's "suppression" of alleged "*Rosario*"[11] material–namely, the minutes from Cox's sentencing proceeding.  Under *Rosario*, the prosecution must disclose a witness' statements–regardless of whether they are potentially exculpatory or impeaching. The rule is codified at C.P.L. § 240.45(1)(a). Valerio asserts that Cox's sentencing minutes constituted *Rosario* material within

---

[11]        In *People v. Rosario*, 9 N.Y.2d 286, *cert. denied*, 368 U.S. 866 (N.Y. 1961), the New York Court of Appeals held that a defendant is entitled to inspect the prior statements of a prosecution witness, prior to cross-examination, whether or not the witness' statements vary from his or her testimony on the stand. *People v. Ranghelle*, 69 N.Y.2d 56, 62 (N.Y. 1986) (citing *Rosario*, 9 N.Y.2d at 289).

the meaning C.P.L. § 240.45(1)(a), which requires disclosure of "[a]ny written or recorded statement, including any testimony before a grand jury and an examination videotaped pursuant to section 190.32 of this chapter, made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness's testimony[.]" N.Y. Crim. Proc. Law § 240.45(1)(a).

Respondent notes that Valerio has never established that Cox actually made any statements "which relate[d] to the subject matter of [his] testimony," N.Y. Crim. Proc. Law § 240.45(1)(a), when Cox was sentenced following his guilty plea. In New York, a defendant has the opportunity to give a statement personally but is not required to do so. *See* Resp't Ex. K at 9-10 (citing N.Y. Crim. Proc. Law § 380.50). Thus, it was not a given that Cox even made a statement at his sentencing, let alone one that was about the offense with which he and Valerio were charged so as to make it "relate to the subject matter of [his] testimony" for purposes of *Rosario* and C.P.L. § 240.45(1)(a).

Because Valerio only offers his own speculation as to whether such *Rosario* statements by Cox even exist, trial counsel had no colorable basis for making a motion demanding discovery sanctions. *See Sweat v. United States*, No. 05-CV-221, 95-CR-232, 2005 WL 3179672, at *7 (N.D.N.Y. Nov. 29, 2005) (rejecting claim of ineffective assistance of trial counsel based on failure to call certain witnesses where "[m]uch of what the[ ] witnesses supposedly would have testified to [wa]s based upon nothing more than pure speculation by Petitioner"; "[s]uch speculation [wa]s insufficient") (citing *United States v. Vargas*, 920 F.2d 167, 170 (2d Cir. 1990) (petitioner's affidavit making allegations about what uncalled witnesses would have testified to in a "conclusory fashion" failed to demonstrate that counsel's decision

-31-

not to call a witness was unreasonable), *cert. denied*, 502 U.S. 826 (1991)). Trial counsel should

not be faulted for declining to make a legally and factually baseless motion. *See United States v.*

*Kirsch*, 54 F.3d 1062, 1071 (2d Cir.1995) (denying ineffective assistance claim in part because

motions not pursued by trial counsel were without merit).

Moreover, the record establishes that, even without having the sentencing minutes, trial

counsel was able to effectively cross-examine Cox so as to underscore the inconsistencies

between his testimony that he had no knowledge concerning the cocaine hidden in the vehicle

and the substance of his guilty plea to seventh degree criminal possession of that same cocaine.

*See* T.584-91. There is no basis for finding that the absence of Cox's sentencing minutes had any

impact on the effectiveness of trial counsel's cross-examination of Cox or the outcome of the

trial. Thus, Valerio cannot demonstrate that he was prejudiced by trial counsel's omission

regarding the alleged *Rosario* violation.

### 4. Failure to object to the admissibility of the drugs

Valerio faults trial counsel for failing to object to the introduction of the cocaine

discovered in the Chevy Lumina; according to Valerio, there was insufficient evidence as to the

chain of custody of the drugs as well as evidence of tampering.[12] Respondent argues that to make

such a motion not only would have been counter to the defense strategy but would have been

futile.

In his opening statement, trial counsel told the jury that the defense conceded that the

---

[12] During the trial, the prosecutor brought to the attention of the parties that a rip in the outer packaging had occurred while the cocaine was at the Sheriff's Department, which charged with securing the evidence during the trial. The parties agreed that the rip had occurred in outside packaging and in no way affected or touched the individual packaging of the cocaine itself. T.452. The trial judge agreed that he had no concerns about the integrity of the packaging. T.453.

cocaine was, in fact cocaine; that its weight was as stated by the prosecution; and that Valerio

was a passenger in the vehicle in which the cocaine was found. T.226. The theory of the defense

was that Valerio did not knowingly possess the cocaine. T.227; *see* also N.Y. Penal Law §

220.21(1). Because neither the cocaine, nor its weight or location in the Chevy Lumina were in

issue, there was no reason for trial counsel to object to admission of the drugs at trial. *See* T.512

(defense counsel stated that "[b]ased upon the stipulation entered into between the parties I have

absolutely no objection . . . ."). Such an application would have been inconsistent with defense

counsel's strategy of denying that Valerio had the requisite knowledge regarding the cocaine's

presence in the car.

      Furthermore, given the substantial evidence supporting the chain of custody of the

narcotics, any objection by trial counsel to introducing the drugs into evidence had little chance

of success. Counsel's failure to object should not be deemed ineffective assistance, "particularly

where such objection would have been futile." *Burks v. Hanslmaier*, 96 Civ. 0861 (DLC) (RLE),

1997 U.S. Dist. LEXIS 6063, at *9 (S.D.N.Y. Apr. 30, 1997). I note that even if there were an

actual defect in the chain of custody, both federal and New York state law clearly hold that this

factor goes to the weight of the evidence, not its admissibility. *See, e.g.*, *United States v. Hon*,

904 F.2d 803, 810 (2d Cir. 1990); *People v. Tirado*, 267 A.D.2d 95, 95, 700 N.Y.S.2d 135 (App.

Div. 1st Dept. 1999) (citing *People v. Julian*, 41 N.Y.2d 340, 344 (N.Y. 1977)). Since the

prosecution established a chain of custody sufficient to provide reasonable assurances that the

package of cocaine found by the police in the secret compartment in the Chevy Lumina was the

same package introduced into evidence at trial and that its condition essentially was unchanged,

*see, e.g.*, *People v. Tirado*, 267 A.D.2d at 95, 700 N.Y.S.2d 135, there is no reasonable

probability that trial counsel would have succeeded in having the drugs excluded at trial.

### C.      Evaluation of Appellate Counsel's Performance Under *Strickland*

I now must assess appellate counsel's decision to omit the foregoing claims of ineffective assistance of trial counsel on direct appeal. The Supreme Court has instructed that appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983)). "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. at 751-52); *accord, e.g.*, *Sellan v. Kuhlman*, 261 F.3d 303, 317 (2d Cir. 2001) ("This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (quotations omitted). The reviewing court should not second-guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues. *Jones*, 463 U.S. at 754; *see also Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998). Thus, a petitioner may establish constitutionally inadequate performance only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo*, 13 F.3d at 533.

As discussed above, Valerio has not shown that any of the aspects of trial counsel's performance about which he complains represented decisions lacking a legitimate strategic basis or were reasonably likely to have affected the outcome of his trial. Thus, I cannot find that trial counsel's performance either was outside the prevailing professional norms of practice or that

any of his alleged omissions prejudiced Valerio. Furthermore, a review of the record establishes

that counsel provided meaningful representation, pursuing a well-articulated defense strategy

throughout the trial. Given that the omitted claims of ineffective assistance of trial counsel are

lacking in merit, appellate counsel exercised reasonable judgment in declining to raise them on

direct appeal. I note that appellate counsel's arguments regarding the Fourth Amendment issues

convinced one justice of the Appellate Division, who dissented, stating that he would have

granted the defense motion to suppress the drugs and dismissed the indictment. This justice also

granted Valerio leave to appeal. There is no reasonable possibility that the omitted claims, which

were significantly and clearly weaker than the claims actually raised, would have resulted in a

reversal of Valerio's conviction. Valerio consequently was not prejudiced by appellate counsel's

failure to brief them. Because Valerio has failed to establish either the "deficient performance"

or the "prejudice" prong of *Strickland*'s two-part test, I recommend that Valerio's claim of

ineffective assistance of appellate counsel be dismissed.

## VI.    Conclusion

For the reasons set forth above, the Court recommends that the petition for a writ of

habeas corpus filed by petitioner be **denied**. Furthermore, the Court finds that petitioner has not

made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. §

2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a

substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State

Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). Therefore, the Court recommends that no

certificate of appealability should issue with respect to any of petitioner's claims.

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: January 9, 2008
        Buffalo, New York.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1ˢᵗ Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: Buffalo, New York
       January <u>9</u>, 2008.